JENNER & BLOCK LLP
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone:    +1 213 239 6900
Facsimile:    +1 213 239 5199

WOOD, SMITH, HENNING & BERMAN LLP
Patrick S. Schoenburg (SBN 162842)
pschoenburg@wshblaw.com
7108 North Fresno Street, Suite 250
Fresno, California 93720-2952
Telephone:    +1 559 437 2860
Facsimile:    +1 559 705 1934

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| City of Fresno, California<br><br>                    Plaintiff,<br><br>        v.<br><br>3M Company, et al.<br><br>                    Defendants. | **DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL** |

Defendant 3M Company ("3M"), by and through its undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of California for the County of Fresno to the U.S. District Court for the Eastern District of California. As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.     Plaintiff the City of Fresno California ("Plaintiff") seeks to hold 3M and other Defendants liable for alleged environmental contamination based on their manufacture, distribution, or release of per- and polyfluoroalkyl substances ("PFAS") or PFAS-containing products. Plaintiff seeks recovery for the alleged contamination of its soil, drinking water, and other property.

2.     Plaintiff alleges that 3M and other Defendants "designed, manufactured, marketed, stored, sold, used, or disposed of PFAS or PFAS products that have caused or will cause actual or threatened releases of PFAS to soil, water, or to other City property." Compl. ¶ 27. Plaintiff further alleges that those PFAS—which included perfluorooctane sulfonic acid ("PFOS"), perfluorooctanoic acid ("PFOA"), and perfluorohexanesulfonic acid ("PFHxS")—entered the environment and are able to "move long distances through soil and groundwater," which "make PFAS a common, long-term source of groundwater contamination." *Id.* ¶¶ 6, 11.

3.     The alleged release of PFAS (including of PFOS, PFOA, and/or PFHxS) in Fresno has plausibly resulted in part from the use, storage, and/or disposal of PFAS-containing aqueous film-forming foams ("AFFF") that 3M produced for use by the federal government in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense ("DoD"). Here, the alleged PFAS contamination of Plaintiff's water supply and certain of its property plausibly resulted from, at least in part, the use of MilSpec AFFF at the California Air National Guard Base. That air base sits within Fresno's Yosemite International Airport and directly abuts the city's drinking water wells and water retention basins that Plaintiff used for irrigation. Any

claims that Fresno's water supply and properties have been contaminated with PFAS attributable to 3M thus relate at least in part to 3M's manufacture of MilSpec AFFF for the federal government.

4.    Because the alleged PFAS contamination of Plaintiff's drinking water supply and property plausibly resulted at least in part from the use, storage, and/or disposal of MilSpec AFFF, 3M intends to assert the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Under this defense, 3M is not subject to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. And under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See DeFiore v. SOC LLC*, 85 F.4th 546, 553–54 (9th Cir. 2023). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

5.    Courts have consistently held that AFFF manufacturers may remove cases to federal court where the complained-of contamination plausibly arises at least in part from MilSpec AFFF. *See, e.g.*, *Maine v. 3M Co., Inc.*, 159 F.4th 129, 139–40 (1st Cir. 2025); *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3–4 (W.D. Mich. Jan. 6, 2021); *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("*In re AFFF*").

6.    It makes no difference that Plaintiff purports to disclaim any damages arising from AFFF; it is still seeking damages plausibly attributable to PFAS-containing MilSpec AFFF. As 3M details below, PFAS from MilSpec AFFF use plausibly commingled with PFAS from non-AFFF sources in the drinking water and other property for which Plaintiff seeks to recover. Moreover, PFAS from MilSpec AFFF is chemically indistinguishable from PFAS from other sources, and Plaintiff has no reliable way to segregate out the PFAS covered by its disclaimer. Even if Plaintiff were to claim to be able to distinguish sources of PFAS, it would not be sufficient. As multiple appellate courts have made clear in rejecting similar attempts by other plaintiffs to

disclaim damages resulting from AFFF, "3M's Military AFFF production is inextricably related to [Plaintiff's] general allegations of PFAS contamination, notwithstanding [Plaintiff's] attempts to draw a line between 3M's federal and non-federal work." *Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025). 3M is therefore entitled to a federal forum to litigate its federal defense, *see Maine,* 159 F.4th at 139 (holding that 3M had a "colorable" government contractor defense, even in an ostensibly non-AFFF suit, because the suit "necessarily raise[s]" questions concerning the commingling of AFFF and non-AFFF PFAS ), and to remove this action to federal court based on federal officer jurisdiction.

## BACKGROUND

7.    This action was filed on October 31, 2025, in the Superior Court of the State of California for the County of Fresno, bearing Case No. 25CECG05176. *See* Ex.1, Summons and Complaint. 3M was served with the complaint on December 9, 2025.

8.    The complaint alleges that Plaintiff provides drinking water to "approximately 142,200 residential, commercial, and industrial customers in Fresno, California." Compl. ¶ 1. 3M and other Defendants, according to Plaintiff, are allegedly responsible for "designing, manufacturing, marketing, storing, selling, using, or disposing of PFAS or PFAS products" that "caused PFAS contamination of soil, water, or other City property." *Id.* ¶¶ 20–21. Plaintiff further alleges that PFAS "dissolve easily in water, are able to move long distances through soil and groundwater, and resist biodegradation and remediation," making "PFAS a common, long-term source of groundwater contamination," *id.* ¶ 10, which in turn allegedly "render[s] drinking water non-potable and require[s] significant cost to remove from soil, water, or other City property to protect human health or the environment or comply with regulatory standards," *id.* ¶ 12. Plaintiff asserts that it brought this action to "protect human health or the environment, comply with regulatory standards, or otherwise respond to [PFAS] in soil, water (surface water, groundwater, or drinking water wells), or other City property," *id.* ¶ 1, alleged contamination it contends was caused by 3M and other Defendants. *See id.* ¶¶ 20–27.

9.     On the basis of those allegations, Plaintiff brings claims against Defendants, including 3M, for Strict Products Liability (*id.* ¶¶ 82–95), Declaratory Relief (*id.* ¶¶ 102–108), Negligence (*id.* ¶¶ 109–122), Nuisance (*id.* ¶¶ 123–135), and Trespass (*id.* ¶¶ 136–141).[1]

10.     The Complaint purports not to make any "claim in this action that AFFF caused or contributed to the actual or threatened contamination alleged in this Complaint." *Id.* ¶ 75. But Plaintiff does not allege (and cannot show) that AFFF has not plausibly contributed to the PFAS purportedly contaminating its soil, water, and property. To the contrary, Plaintiff acknowledges that AFFF contamination may have occurred, but claims "[o]n information and belief" that such contamination is "separable." *See id.* ¶ 3. As explained below, this Court "must credit 3M's theory that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property" at issue in this suit. *Maine*, 159 F.4th at 138. To the extent that Plaintiff seeks to challenge 3M's theory of commingling, that dispute must be the subject of discovery and resolved in federal court.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1442 AND 1446 ARE MET

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(b) and 1442(a) because the Superior Court of the State of California for the County of Fresno is located within the Eastern District of California.

12.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove it under § 1442(a)(1). *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Fed. Home Loan Mortg. Corp. v. Crittenden*, 2012 WL 3023264, at *2 (M.D. Ala. June 14, 2012).

13.     Pursuant to 28 U.S.C. § 1446(a), 3M has attached as **Exhibit 1** true and accurate copies of the Complaint and summons, and 3M has attached collectively as **Exhibit 2** true and

---

[1] Plaintiff asserts other claims against other Defendants.

accurate copies of all documents on file in Superior Court (including all process, pleadings, and orders served upon 3M).

14.    3M was served with the Complaint on December 9, 2025, fewer than 30 days ago. This Notice of Removal is thus timely filed in accordance with 28 U.S.C. § 1446(b).

15.    By removing this action, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, personal jurisdiction, or venue. 3M specifically reserves the rights of all Defendants to assert any defenses or objections to which they may be entitled.

16.    3M reserves the right to amend or supplement this Notice of Removal.

17.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE
## FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. 1442(A)(1)

18.    The federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where, as here, the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *see also Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

19.    A defendant's right to a federal forum under the federal officer removal statute is "much broader" than under the general removal statute, 28 U.S.C. § 1441. *DeFiore*, 85 F.4th at 554 (quoting *Durham,* 445 F.3d at 1253).  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question

1  element is met if *the defense* depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431

2  (1999) (emphasis added). In this regard, Section 1442(a)(1) protects "the government's need to

3  provide a federal forum for its officers and those who are 'acting under' a federal office," *Albrecht*

4  *v. A.O. Smith Water Prods.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21,

5  2011) (citation omitted), an important federal policy that courts recognize "should not be frustrated

6  by a narrow, grudging interpretation of [§] 1442(a)(1)," *Willingham v. Morgan*, 395 U.S. 402, 407

7  (1969); *see Durham*, 445 F.3d at 1252. To effectuate this policy, Section 1442 must be "liberally

8  construed" in favor of removal. *Watson v. Philip Morris Co., Inc.*, 51 U.S. 142, 147 (2007).

9      20.    In a wide range of PFAS cases across the country, courts have found removal proper

10  under § 1442(a)(1) where, as here, the removing defendant plausibly alleges that the plaintiff's

11  injuries are at least in part the result of or related to MilSpec AFFF, regardless of whether the

12  plaintiff has purported to disclaim MilSpec AFFF-related injuries. *See Maine*, 159 F.4th at 131–

13  32, at *2 (disclaimer of AFFF-related damages did not preclude federal jurisdiction where the court

14  would need to assess whether—and the extent to which—AFFF contamination comingled with

15  non-AFFF contamination); *Maryland*, 130 F.4th at 389–92 (crediting 3M's allegations regarding

16  commingling and rejecting plaintiff's argument that its purported disclaimers precluded removal);

17  *City of Irondale v. 3M Co.*, No. 2:24-cv-1327, 2024 WL 2419238, at *8 (N.D. Ala. Aug. 19, 2025)

18  ("[O]nce 3M plausibly alleges a [government contractor] defense, it does not matter whether

19  Irondale specifically seeks MilSpec AFFF-related damages or not."); *Nessel*, 2021 WL 744683, at

20  *3 (denying motion to remand in PFAS case because, notwithstanding plaintiffs' assertion "that

21  they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide

22  what defense Defendants might present").

23      21.    Federal courts have also found that removal under § 1442 is proper when the

24  complaint expressly seeks damages for alleged PFAS-related injuries from MilSpec AFFF. *See,*

25  *e.g.*, *Nessel*, 2021 WL 744683, at *3; *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL

26  4781145 (E.D.N.Y. Sept. 30, 2018).

27

28

22.    Here, the allegedly contaminating PFAS from non-AFFF sources plausibly has commingled in Plaintiff's water supply and property with PFAS from MilSpec AFFF. As a result, Plaintiff's alleged injuries are attributable at least in part to MilSpec AFFF.

23.    Because PFAS from non-AFFF sources cannot be isolated from PFAS from MilSpec AFFF sources—the chemicals commingle indistinguishably in the environment—Plaintiff necessarily is seeking to impose liability on 3M for alleged contamination attributable in part to MilSpec AFFF, notwithstanding its alleged disclaimer. Moreover, because 3M intends to assert the government contractor defense, for each and every instance of alleged PFAS contamination in Fresno, a court and fact-finder will need to determine whether and to what extent such contamination resulted from MilSpec AFFF. As multiple federal courts of appeals have recently made clear, 3M is entitled to a federal forum to litigate these questions. *See Maine*, 159 F.4th at 138-139 (reversing remand where "[r]esolution of Maine's Complaint requires addressing whether and to what extent such contamination from AFFF sources has commingled with non-AFFF"); *Maryland*, 130 F.4th at 392 (holding that where "a factfinder must . . . decide the important causation and allocation questions" raised by the commingling of AFFF and non-AFFF PFAS, those questions "belong in federal court" ). Consistent with this precedent, this case is properly removed to this Court.

A.    **3M Produced MilSpec AFFF For The U.S. Military.**

24.    In the late 1960s and early 1970s, the U.S. military began using MilSpec AFFF to extinguish fires on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating to human lives and important property—and to train military personnel in extinguishing such fires. Indeed, it was the U.S. Naval Research Laboratory who developed AFFF (with some assistance from industry participants), and its researchers were

granted an AFFF-related patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

25.     To this day, the design, manufacture, and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command, a component of the DoD. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[5] Prior to such listing, "a manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[8]

26.     From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of PFAS chemicals that includes

---

[2] See U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).
[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.
[4] The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.
[5] MIL-PRF-24385F(4) § 3.1 (2020).
[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.
[7] Id.
[8] See, e.g., MIL-PRF-24385F(4) § 4.1 (2020).

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

PFOA and PFOS.[9] Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS in AFFF formulations (subject to limits imposed in 2017).[10] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[11]

27.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more AFFF products manufactured by 3M were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[12] In addition to directly selling MilSpec AFFF to specific military bases, 3M was a major supplier of MilSpec AFFF to the Defense Logistics Agency, which distributed AFFF for training and use at military bases across the United States. Over time, the U.S. military used MilSpec AFFF produced by 3M throughout the United States, including at military installations across California.

---

[9] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.
[10] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3.
[11] *See* MIL-PRF-24385F(4) § 6.6.
[12] See MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1969-24).

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    MilSpec AFFF Plausibly Contributed To Plaintiff's Alleged PFAS Contamination.**

    **1.    MilSpec AFFF Plausibly Contributed To The Alleged PFAS Contamination of Plaintiff's Water Supply.**

28.    MilSpec AFFF has been used, stored, and discharged at military facilities in Fresno located near water wells used by Plaintiff, including at the California Air National Guard base located at the southwest corner of Fresno Yosemite International Airport ("Fresno CANG Base"). *See Preliminary Site Investigation Report for PFAS Fresno Yosemite International Airport (FYI)*, BSK, at 2–3 (Oct. 26, 2022), available at https://documents.geotracker.waterboards.ca.gov/ esi/uploads/geo_report/4218814432/T10000012775.PDF ("Preliminary Report"). At least some of the AFFF used at the Fresno CANG Base was 3M MilSpec AFFF. In addition to selling MilSpec AFFF to the DoD—which the DoD then distributed to bases across the country (*see supra* ¶ 25)— 3M's internal sales records reflect that it sold and shipped MilSpec AFFF directly to the Fresno CANG Base.

29.    AFFF "historically" has been used and/or stored at various locations at the Fresno CANG Base, including for "firefighting training exercises, suppressing aircraft/vehicle fires, and in aircraft hangar fire suppression systems." *Final Site Inspection Report Air National Guard Phase II Regional Site Inspection for [PFAS], Fresno Air National Guard Base, Fresno, California*, Air National Guard, at 3–5 (March 2019), available at https://ar.cce.af.mil/Search ("Final Report") (to locate the Final Report, filter the search tool to the "Fresno Air Guard Base, CA" and conduct a "Full Document Search" for PFAS). For example, from 1994 to 2007, an aircraft hangar on the Fresno CANG Base was equipped with a Fire Suppression System using 400 gallons of AFFF. *Id.* at 4. Regular testing of that system resulted in the discharge of AFFF, and the system was known to leak. *Id.*

30.    The Fresno CANG Base is located near a water retention basin that "collects stormwater runoff from areas of the airport." Preliminary Report at 10. The use of AFFF at the Fresno CANG Base resulted in the retention basin "collect[ing] AFFF-impacted waters following foam or discharge training events," *id*, as confirmed by testing: PFAS—including PFOS and

PFHxS—has been detected in groundwater samples at the Fresno CANG Base, including at the water retention basin. *See* Final Report at Figure 5-4; Preliminary Report at 55.

31.     This water retention basin is located approximately 0.07 miles away from a municipal water well (Well 70) used by the City of Fresno. *See* Preliminary Report at 15. Given the well-documented history of AFFF use and storage at the Fresno CANG Base and its proximity to Well 70, it is plausible that at least some of the alleged contamination of Plaintiff's water supply is the result of MilSpec AFFF use and/or storage. As Plaintiff alleges, "PFAS compounds . . . are able to move long distances through soil and groundwater," making PFAS a "common, long-term source of groundwater contamination." Compl. ¶ 11. In fact, Plaintiff has acknowledged that PFAS has been detected at Well 70. *Water Quality Annual Report 2022*, City of Fresno Department of Public Utilities Water Division, at PDF p. 9 available at https://www.fresno.gov/wp-content/uploads/2023/06/CCR2022-2.pdf. Therefore, the use and/or storage of MilSpec AFFF plausibly contributed to the alleged PFAS contamination of Plaintiff's water supply.

**2.      MilSpec AFFF Plausibly Contributed To The Alleged PFAS Contamination of Plaintiff's Property.**

32.     MilSpec AFFF use at the Fresno CANG Base has also plausibly contributed to the alleged PFAS contamination of Plaintiff's unspecified "other property" for which it seeks to recover.

33.     Most notably, Plaintiff owns and operates Fresno Yosemite International Airport, where Fresno CANG Base is located. *Airport Management Team*, Fresno Yosemite International Airport, available at https://flyfresno.com/airport-management-team/. The use of MilSpec AFFF at the Fresno CANG Base has plausibly contributed to the presence of PFAS at Fresno Yosemite International Airport.

*** 

34.     Notwithstanding Plaintiff's disclaimer, federal officer removal is proper because Plaintiff's claimed injury plausibly traces in part to PFAS from 3M's MilSpec AFFF. 3M is entitled to have a federal court oversee all discovery and adjudicate all questions related to any

1   claimed apportionment of Plaintiff's injury between PFAS from MilSpec AFFF sources and PFAS

2   from other sources. *See Maine*, 159 F.4th at 131–32, 139 n.22 (reversing remand because,

3   notwithstanding disclaimer of AFFF-related damages, factfinder would need to determine how

4   much, if any, PFAS contamination plausibly stems from AFFF, and concluding that "the

5   determination of whether the PFAS contamination at a site is zero percent or some amount more

6   than zero percent attributable to AFFF is itself a source allocation determination"); *Maryland*, 130

7   F.4th at 392 (holding that where "a factfinder must . . . decide the important causation and

8   allocation questions," those questions "belong in federal court"); *Nessel*, 2021 WL 744683, at \*3

9   (denying State of Michigan's motion to remand and concluding that federal officer removal was

10  proper notwithstanding the complaint's allegation that Michigan was not seeking relief for

11  MilSpec AFFF; "Plaintiffs' artful pleading does not obviate the facts on the ground.").

**C.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

13      35.     As mentioned above, removal is proper under § 1442(a)(1) where, as here, the

14  removing defendant establishes that: (a) it is a person within the meaning of the statute; (b) it acted

15  under federal authority; (c) its acts taken pursuant to a federal officer's directions have a causal

16  nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can

17  assert a colorable federal defense. Each of these requirements is met.

**1.    The "Person" Requirement Is Satisfied.**

19      36.     For purposes of § 1442(a)(1), the term "person" includes "corporations, companies,

20  associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord*

21  *Isaacson*, 517 F.3d at 135-36. 3M is a corporation and therefore a "person" under the statute.

**2.    The "Acting Under" Requirement is Satisfied.**

23      37.     The second requirement (that the defendant "act[ed] under" a federal officer) is

24  satisfied when the defendant has assisted or helped carry out the duties or tasks of a federal officer.

25  *Watson*, 551 U.S. at 152; *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally

26  construed in favor of the entity seeking removal," *Sawyer*, 860 F.3d at 255 (internal quotation

27  marks omitted), with federal courts "explicitly reject[ing] the notion that a defendant could only

28

be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency," *Papp*, 842 F.3d at 813. Instead, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government.*" *Sawyer*, 860 F.3d at 255 (emphasis in original).

38.     The requirement of "acting under" a federal officer is met here. The alleged PFAS contamination of Plaintiff's drinking water stems, at least in part, from 3M's manufacture and sale of MilSpec AFFF, a vital product that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137; *see In re AFFF*, 2019 WL 2807266, at *2 (finding that "acting under" requirement was satisfied because defendant demonstrated that it manufactured MilSpec AFFF under guidance of U.S. military); *Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same). MilSpec AFFF is a "mission-critical" military and aviation safety product for which the government depends on private contractors. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "lifesaving product" used by all branches of the U.S. armed forces (internal quotation marks omitted)). As the Naval Research Laboratory has explained, the government "was responsible for the original concepts and formulations" of MilSpec AFFF but "it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations," resulting in 3M "contribut[ing] considerably to the success of the development of AFFF."[13] In short, the military has long depended upon outside contractors like 3M to develop and supply AFFF.

---

[13] Fulfilling the Roosevelts' Vision, *supra* n.2, at 37.

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

39.    In designing, manufacturing, and supplying MilSpec AFFF, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. MilSpec AFFF products were also subject to testing by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD. [14]

40.    For these reasons, 3M has satisfied the "acting under" requirement. *See In re AFFF*, 2019 WL 2807266, at *2; *Nessel*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *8–9.

### 3.    The "Under Color Of Federal Office" Requirement Is Satisfied.

41.    The third requirement (that the defendant's actions were taken "under color of federal office") requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Isaacson*, 517 F.3d at 137). To meet it, "there need be only *a connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137–38 (deeming sufficient that an act allegedly causing plaintiff's injuries occurred while defendant was performing its official duties). [15]

42.    Here, Plaintiff 's claims or alleged injuries arise at least in part from 3M's manufacture and sale of MilSpec AFFF that was used, stored, and/or released by the federal

---

[14] *See* Dep't of Defense, SD-6, *supra* n.6, at 1.

[15] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

government at the Fresno CANG Base. As a result, Plaintiff's claims against 3M relate to its acts taken under color of federal office. *See In re AFFF*, 2019 WL 2807266, at *3 (nexus element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *Ayo*, 2018 WL 4781145, at *9 (finding "evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government.").

43.    Courts "credit" the removing party's "theory of the case" when determining whether the requisite connection exists. *Acker*, 527 U.S. at 432; *DeFiore v. SOC LLC*, 85 F.4th at 557; *see also Maryland*, 130 F.4th at 389; *Express Scripts, Inc.*, 119 F.4th at 192; *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"). As averred in this Notice of Removal, Plaintiff's alleged injuries plausibly arise at least in part from MilSpec AFFF. Plaintiff's claims thus sufficiently relate to 3M's actions under color of federal office. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) ("[I]t is enough for . . . removal that at least some of the pollution arose from the federal acts.").

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied.

44.    The fourth requirement (that the federal defense be "colorable") is satisfied by 3M's assertion of the government contractor defense. *See Maine*, 159 F.4th at 139 (finding 3M's government contractor defense to be a "colorable" defense to PFAS suit, notwithstanding disclaimer of AFFF-related damages).

45.    At the removal stage, a defendant need only show that its government contractor defense is colorable—that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). The defendant "need not win [its] case' before removal.'" *DeFiore*, 85 F.4th at 558 (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 (explaining that this permissive standard, which requires a colorable but not "clearly sustainable" defense, ensures

that "the validity of the defense will be tried in federal court" (citation omitted)). This is because, at the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, the "inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). And if there is a challenge to "the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

46.    Under the government contractor defense, a defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M has satisfied these elements for purposes of removal. *See Maine*, 159 F.4th at 139.

47.    The requirement of "reasonably precise specifications" is met by evidence showing that either (a) the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Here, the evidence shows both. Naval Sea Systems Command's participation in the design of MilSpec AFFF was not mere "rubber

17

stamping": It created (and has updated) detailed specifications governing AFFF's formulation, performance, testing, storage, inspection, packaging, and labeling.[16] Those specifications are "reasonably precise," and indeed they *required* the use of PFAS. *See In re AFFF*, 2019 WL 2807266, at *3 (noting that a colorable defense was alleged where AFFF MilSpec "included specifications for the chemical class that includes PFOS/PFOA").[17] In addition, to this day, DoD continues to purchase and use MilSpec AFFF with full awareness of the product's PFAS content and of the alleged risks associated with PFAS. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

48.    The requirement that the equipment conform to the specifications is met because 3M's products have appeared on the DoD Qualified Products List.[18] This necessarily means that Naval Sea Systems Command determined they conformed to the MilSpec. *See In re AFFF*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); *Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications.").

---

[16] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 4, *supra*.
[17] As noted earlier, until 2019, the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," which are members of the PFAS family. Even after this express requirement was removed from the specification, the government has continued to implicitly mandate the use of PFAS because PFAS-containing surfactants are the only kind that allow AFFF to meet the specification's performance requirements.
[18] *See* QPL/QPD Histories, *supra* n.12.

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

49.     Regarding the third requirement (the supplier's warning), the U.S. government was and is sufficiently aware of any alleged product-related "dangers," *Boyle*, 487 U.S. at 512, in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that PFAS is reportedly associated with environmental or human health issues.[19] For example, as early as October 1980, a report supported by multiple components of the U.S. military stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[20] In June 1991, the Air Force observed that its fire training activities had resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[21] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[22] In 2002, the U.S. Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[23] More recently, in a November 2017 report to Congress, DoD acknowledged the EPA's concerns regarding PFOS and PFOA—but nonetheless continued to describe AFFF-containing

---

[19] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002) (excerpt).

[20] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[21] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[22] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[23] *See* EPA, Revised Draft Hazard Assessment, *supra* n.19.

PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[24] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants"[25] and recognizes that PFAS, including PFOS and PFOA (subject to certain limits), will be present in AFFF formulations.[26] *See In re AFFF*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ."); *Ayo*, 2018 WL 4781145, at *12.

50.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). And where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13; *see also People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024) ("If the contamination came from AFFF, then the government contractor defense could apply. This

---

[24] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.
[25] MIL-PRF-24385F(4) § 3.2.
[26] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

would be true even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF.").

51.     In the AFFF multidistrict litigation, the court has found based on an extensive factual record that the government contractor defense asserted by 3M presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is necessarily, at minimum, "colorable."

52.     In sum, 3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiff that were caused in whole or in part by 3M's compliance with military specifications, Plaintiff is attempting to wield state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509. Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).


Dated: December 29, 2025                    JENNER & BLOCK LLP



                                                By:   */s/  Kate T. Spelman*
                                                      Kate T. Spelman

                                                Attorneys for 3M Company

21

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this the 29th day of December 2025, I electronically filed the

3

foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a

4

notice of electronic filing to all counsel of record, and that a copy was served via U.S. Mail to the

5

following:

6

7
Justin Massey
Michael Axline

8
Daniel Boone
Brandon Moore

9
MILLER & AXLINE
1050 Fulton Avenue, Suite 1000

10
Sacramento, CA 95825
Tel: (916) 488-6688

11
jmassey@milleraxline.com

12

13
A BRITE COMPANY, INC.
3217 Wood Dr.

14
Garland, TX 75041

15
ASTERION, LLC
c/o National Registered Agents, Inc.

16
330 N. Brand Blvd. Ste. 700
Greendale, CA 91203

17
ATOTECH USA, LLC
c/o Cogency Global, Inc.

18
1325 J. St., Ste. 1550
Sacramento, CA 95814

19

20
B&T CUSTOM POLISHING
4573 E. Harvey Ave.
Fresno, CA 93702

21

22
BENCHMARK PRODUCTS, INC.
c/o Mark R. Molden

23
5772 Lourdes Drive
Huntington Beach, CA 92649

24
BLAST TECH BECAUSE RUST NEVER SLEEPS
c/o Jonathan L. Petty

25
7636 N. Ingram Avenue, Suite #111
Fresno, CA 93711

26

27

28

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

CALIFORNIA CHROME, LLC
c/o Registered Agents Inc.
30 N Gould St. Ste. R
Sheridan, WY 82801

CALIFORNIA NATURAL COLOR
6531 E. Olive Ave.
Fresno, CA 93727

CHEMITHON SURFACE FINISHING, INC.
c/o Michael Siderius
500 Union St. Ste. 847
Seattle, WA 98101

CLOVIS SPECIALTY PLATING
1366 N. Sierra Vista Ave
Fresno, CA 93703

COMMERCIAL ELECTRO PLATING, INC.
1937 S. Cherry Ave.
Fresno, CA 93721

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
DUBOIS CHEMICALS, INC.
National Registered Agents, Inc.
330 N. Brand Blvd. Ste. 700
Glendale, CA 91203

DUPONT DE NEMOURS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

EIDP, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

E.I. DU PONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

E. & J. GALLO WINERY
c/o Lawyers Incorporating Service
2710 Gateway Oaks Drive Ste. 150 N.
Sacramento, CA 95833

23

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

1   FMC CORPORATION
    c/o The Corporation Trust Company
2   Corporation Trust Center
    1209 Orange Street
3   Wilmington, DE 19801

4   FRESNO CHROME PLATING, INC.
    c/o Richard L. Morgan
5   3904 W. Fir Avenue
    Fresno, CA 93711
6
    HUNTER CHEMICAL CORPORATION
7   428 Pennsylvania Ave.
    Fort Washington, PA 19034
8
    HUNTER CHEMICAL, LLC
9   220 Commerce Drive, Suite 200
    Fort Washington, PA 19034
10
    KING INDUSTRIAL HARD CHROME, INC.
11  c/o Michael Dowling
    499 W. Shaw Ave. #116
12  Fresno, CA 93704

13  MACDERMID ENTHONE INC.
    c/o Lawyers Incorporating Service
14  2710 Gateway Oaks Drive Ste. 150 N.
    Sacramento, CA 95833
15
    MECLEC, INC.
16  c/o Dolphus Redding
    2022 Alamos
17  Clovis, CA 93611

18  MECLEC METAL FINISHINGS, INC.
    c/o Rod Brandy
19  16299 Rd 36
    Madera, CA 93636
20
    MISSION LINEN SUPPLY
21  c/o Margo A. Ruiz
    720 E. Montecito St.
22  Santa Barbara, CA 93103

23  NEW AGE METAL FINISHING, LLC
    c/o Michael Joseph Zalenski
24  2169 N. Pleasant Ave.
    Fresno, CA 93705
25
    PACIFIC COAST ANODIZING, INC.
26  c/o David Duane Miller
    1616 W. Pine Ave.
27  Fresno, CA 93728

28

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

1    PAVCO, INC.
     c/o The Company Corporation
2    251 Little Falls Drive
     Wilmington, DE 19808
3
     PLATING PROCESS SYSTEMS, INC.
4    BKM Agent Corp.
     30050 Chagrin Boulevard, Suite 100
5    Pepper Pike, OH 44124

6    PROCOM, L.L.C.
     PO Box 4604
7    Incline Village, NV 89450

8    RUTTER ARMEY, INC.
     2684 S. Cherry Ave.
9    Fresno, CA 93706

10   SANDENVENDO AMERICA, INC.
     c/o CT Corporation System
11   330 N. Brand Blvd Ste. 700
     Greendale, CA 91203
12   SOEX WEST TEXTILE RECYCLING USA, LLC
     c/o Roubik Aftandilians
13   3294 E. 26th St.
     Los Angeles, CA 90058
14
     SURTEC, INC.
15   c/o Thomas Kuehne
     115 Forest Ave.
16   Santa Cruz, CA 95062

17   TANK CONSTRUCTION AND ENGINEERING, INC.
     c/o Merl Ledford
18   100 Willow Plaza
     300 Visalia, CA 93291
19
     TARVER COATINGS, INC.
20   c/o Erin Wyrozumski
     4708 N. Blythe Ave.
21   Fresno, CA 93722

22   TEMPEST TECHNOLOGY CORPORATION;
     c/o Erin Wyrozumski
23   4708 N. Blythe Ave.
     Fresno, CA 93722
24
     THE CHEMOURS COMPANY
25   c/o The Corporation Trust Company
     Corporation Trust Center
26   1209 Orange Street
     Wilmington, DE 19801
27

28
DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL

THE CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UNIVAR SOLUTIONS USA, LLC
CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive St. 150 N.
Sacramento, CA 95833

VALLEY CHROME PLATING, INC.
c/o Ray Lucas
1028 Hoblitt Ave
Clovis, CA 93612

VALLEY METAL FINISHING, INC.
c/o Norman Dwayne Hodges
733 G Street
Fresno, CA 93706

WESTERN CHROME, LTD.
c/o Arnoldo Cavalli
785 Loyola Ave
Clovis, CA 93619

/s/   *Kate Spelman*
Kate Spelman
One of the Attorneys for
Defendant 3M Company

DEFENDANT 3M COMPANY'S NOTICE OF REMOVAL